**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| FAUSTINA ABEBIO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 14-0561 (ABJ) |
| | ) |
| G4S GOVERNMENT SOLUTIONS, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Faustina Abebio brings this diversity action against defendant G4S Government Solutions, Inc., alleging that defendant discriminated against her on the basis of her family responsibilities in violation of the District of Columbia Human Rights Act (DCHRA), D.C. Code § 2.1401.01 *et seq.*, when defendant terminated her employment. Defendant has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Def.'s Mot. to Dismiss [Dkt. # 4] ("Def.'s Mot."); Def.'s Mem. in Supp. of Mot. to Dismiss [Dkt. #4] ("Def.'s Mem."). Because the Court finds that plaintiff has failed to state a plausible claim that defendant terminated her employment because of her family responsibilities, the Court will grant defendant's motion to dismiss.

## BACKGROUND[1]

Plaintiff was employed by defendant as a Special Police Officer from December 8, 2008 until her termination on or about February 5, 2014. Compl. [Dkt. # 1-1] ¶ 6. Beginning on March 20, 2012, plaintiff was assigned to the night shift at 441 G Street N.W. from 10:00 p.m. to

---

[1]  For the purposes of its motion, defendant has assumed that all factual allegations contained in the complaint are true. Def.'s Mem. at 2 n.1.

6:00 a.m., Saturday through Wednesday. *Id.* ¶¶ 7–8. Plaintiff is a single mother and the primary caregiver to four children, ages eleven, nine, five, and two, and she relied on her cousin to care for her children while she was at work. *Id.* ¶¶ 10–11.

According to plaintiff, she was working her regular shift on January 15, 2014 when an individual identified only as "Seargent [sic] James"[2] informed her that she would need to extend her shift until 10:00 a.m. because no one was available to cover the next shift. *Id.* ¶ 12. Plaintiff responded that she would only be able to stay until 8:00 a.m. because plaintiff's cousin would be leaving for work, and plaintiff needed to return home to her children. *Id.* ¶ 13. Plaintiff does not indicate what, if anything, Sergeant James said in response.

Around 6:30 a.m., plaintiff took her break and called home. *Id.* ¶ 14. Because no one answered, plaintiff assumed that her cousin had already left for work, and she requested another break at 7:00 a.m. to call home again. *Id.* ¶¶ 14–15. That time, plaintiff's nine-year-old daughter answered the phone and tearfully informed plaintiff that her two-year-old son had hit his head and was bleeding. *Id.* ¶ 15. Plaintiff went to Captain McKinney's[3] office and explained what happened, telling him that she "needed to leave due to a family emergency." *Id.* ¶ 16. Plaintiff further stated that "due to her concerns about her children's safety her mind was not at work, she would not be able to focus, and she did not believe it was a good idea for an armed officer to be at work in her emotional state." *Id.* Captain McKinney sent plaintiff home and informed her that he was removing her name from the schedule for the time being. *Id.* ¶ 17.

---

2    Plaintiff identifies "Seargent [sic] Jose Sanchez" as her supervisor. *Id.* ¶ 9. Plaintiff does not identify Sergeant James or his role for defendants, if any, in her complaint.

3    Plaintiff also does not identify Captain McKinney or his role for defendants, if any, in her complaint.

On January 24, 2014, Captain McKinney asked plaintiff to come in to meet with the Project Manager, Joe Ordona, and a union representative. *Id.* ¶ 18. Ordona informed plaintiff that she was being placed on administrative leave pending the results of a fitness for duty test, and that due to plaintiff's statement that she was unable to carry a weapon, she would need to undergo a psychiatric evaluation and sign a medical release or she would be removed from the client contract. *Id.* Plaintiff signed the release and met with a psychiatrist three days later. *Id.* ¶ 19. Plaintiff alleges that after she described the January 15 incident, the psychiatrist stated that "she didn't know why [p]laintiff had been required to come in because she was fine," and that the doctor conveyed this finding to plaintiff's union representative. *Id.* ¶ 20. Plaintiff also completed and passed a 569 question exam. *Id.*

Plaintiff was instructed to return to her regular shifts on February 3 and 4, 2014. *Id.* ¶¶ 21–22. On February 5, 2014, plaintiff requested a copy of the psychiatrist's report from Captain McKinney, but was told that defendant was not permitted to release a copy to her. *Id.* ¶ 23. Later that day, Captain McKinney informed plaintiff that he was again removing her from the schedule and was forwarding the psychiatrist's report to the client. *Id.* ¶ 24. That same day, plaintiff was informed by her union representative that her employment was being terminated "because the client did not want her to return to the site." *Id.* ¶ 25.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Rule 12(b)(6), the Court "must treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679, quoting Fed. R. Civ. P. 8(a)(2). A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.* at 678 (internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* In ruling on a motion to dismiss, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

**ANALYSIS**

To state a claim of unlawful discrimination under the DCHRA, plaintiff must offer facts sufficient to allege that "(1) she is a member of a protected class, (2) she suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination, that is, an inference that her employer took the action because of her membership in a protected class." *Miles v. Univ. of D.C.*, No. 12-378(RBW), 2013 WL 5817657, at *13 (D.D.C. Oct. 30, 2013), quoting *Brown v. District of Columbia,* 919 F. Supp. 2d 105, 115 (D.D.C. 2013). The Court will accept as true all "well-pleaded factual allegations" set forth in the complaint in determining "whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Even granting plaintiff all reasonable inferences in her favor, however, the Court cannot find that the facts as alleged in her complaint support anything "more than a sheer possibility that [the] defendant has acted unlawfully." *Id.* at 678. Even if plaintiff has plausibly alleged that she is a member of a protected class and suffered an adverse employment action, she has failed to offer any facts to support an inference of discrimination – namely, that she was terminated *because of* her family responsibilities.

As a preliminary matter, the Court is entitled to disregard legal conclusions and factual allegations in the complaint that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Accordingly, the Court finds that plaintiff's conclusory assertions that defendant's proffered reason for her termination "was false and pretext because at all times, [p]laintiff was qualified for her position and fit for duty," Compl. ¶ 26, that "[d]efendant terminated [p]laintiff's employment due to her family responsibilities," *id.* ¶ 28, and that "[d]efendant violated the [DCHRA] by discriminating against [p]laintiff on the basis of her

family responsibilities when it terminated her employment," *id.* ¶ 31, are insufficient in and of themselves to provide the basis for a cause of action.

Setting aside those conclusory statements, the Court finds that plaintiff has failed to allege sufficient facts to support an inference that defendant unlawfully discriminated against her on the basis of her family responsibilities. In her opposition, plaintiff contends that she has successfully stated a claim for relief because the complaint "alleges facts sufficient to infer that her family responsibilities were a substantial factor in her termination." Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss [Dkt. # 6] ("Pl.'s Opp.") at 3. Those facts, as plaintiff summarized them, are as follows:

> On January 15, 2014, Plaintiff informed her supervisor that she could not stay later after her regularly scheduled shift had ended, due to her family responsibilities. Compl. ¶ 13, 16. Subsequently, Plaintiff was removed from the schedule, Compl. ¶ 17, forced to undergo a psychiatric evaluation or be removed, Compl. ¶ 18, and ultimately removed despite successfully undergoing the psychiatric evaluation. Compl. ¶ 20, 25.

Pl.'s Opp. at 3.

Plaintiff is entitled to all reasonable inferences that can be drawn in her favor, but the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts alleged in the complaint. *Browning*, 292 F.3d at 242. Here, plaintiff seeks the inference that, because she was terminated three weeks after leaving work early one day to attend to her family responsibilities, her termination was therefore because of those family responsibilities. But such an inference is simply not supported by the facts she has alleged, especially since plaintiff's summary of the facts supporting her discrimination claim fails to account for other facts that plaintiff herself alleged in the complaint. Far from asserting that plaintiff was "forced to undergo a psychiatric evaluation" *due to her family responsibilities*, Pl.'s Opp. at 3, the complaint states that plaintiff was told that it was "*due to Plaintiff's recent statement that she*

*was unable to carry a weapon*" that "she would need to undergo a psychiatric evaluation and sign a medical release." Compl. ¶ 18. The complaint also alleges that plaintiff was told that she was being placed on administrative leave "pending the results of a fitness for duty test," not for any reason relating to her early departure from her shift almost two weeks prior. *Id.* Even when granting plaintiff all reasonable inferences to which she is entitled, the sparse factual allegations set forth in the complaint "do not permit the court to infer more than the mere possibility of misconduct" by defendant. *Iqbal*, 556 U.S. at 679.

Another court in this district has rejected similarly bare assertions offered by a plaintiff in support of a DCHRA family responsibilities discrimination claim. *Blocker-Burnette v. District of Columbia*, 842 F. Supp. 2d 329 (D.D.C. 2012). In that case, the plaintiff alleged that she was terminated after she was unable to attend a meeting held after working hours because she had to be home to take care of her daughter and her ill father. *Id.* at 337. After the meeting took place, the director of the plaintiff's agency spoke with the plaintiff about missing the meeting:

> [The director] appeared upset and told Plaintiff that when she summoned her to a meeting, she expected her to show up. [The plaintiff] said that she had family responsibilities that had prevented her from attending the meeting and that she had informed [her immediate supervisor] that she would not be there. [The director] simply replied, "[W]e all have issues."

*Id.* "Based on these facts alone," the plaintiff asserted that her termination roughly two weeks later "constitute[d] unlawful discrimination on the basis of her family responsibilities." *Id.* Even granting all reasonable inferences in the plaintiff's favor, the court found that plaintiff had failed to "present more than a 'scintilla of evidence to support [her] claims,'" *id.*, quoting *Freedman v. MCI Telecomms. Corp.*, 255 F.3d 840, 845 (D.C. Cir. 2001), and determined that there was "simply not enough evidence to support . . . a finding" of unlawful discrimination on the basis of the plaintiff's family responsibilities in violation of the DCHRA. *Id.*; *compare with Miles*, 2013

WL 5817657, at *4, *13 (finding that the plaintiff had raised an inference of family responsibilities discrimination under the DCHRA sufficient to survive a motion to dismiss where, among other things, the plaintiff had alleged that she received a letter from a superior "that appear[ed] to equate the plaintiff's maternity leave with 'abandon[ing] the [UDC] [S]ervice [C]enter and its clients'" and that "suggest[ed] that the plaintiff should be terminated from her position" in order to improve the center's performance).

The facts offered by plaintiff in the immediate case are even more sparse than those alleged by the plaintiff in *Blocker-Burnett*. Plaintiff does not claim that her supervisor or any of defendant's employees discussed whether or how her family responsibilities were impacting her work schedule or that any individual made critical comments about her departure on January 15, 2014. And she does not allege that any of defendant's employees told plaintiff that her childcare duties were the reason for – or even a contributing factor to – her termination. Simply put, "there is nothing to support a causal inference" that plaintiff's family responsibilities were defendant's motivating factor in her termination, "other than the plaintiff's conclusory allegations" contained in paragraphs 3, 28, and 31 of the complaint. *Slate v. Pub. Defender Serv. for the Dist. of Columbia*, No. 13-00798(BAH), 2014 WL 1315238, at *10 (D.D.C. Apr. 2, 2014) (rejecting DCHRA and Title VII claims on grounds that the plaintiff had insufficiently pled a causal link between his termination and his male gender).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2). Here, plaintiff has failed to offer facts sufficient even to allege – let alone show – that defendant terminated her employment because of her family responsibilities. Because plaintiff has failed to plead facts

sufficient to state a claim for unlawful discrimination on the basis of family responsibilities in

violation of the DCHRA, the Court will grant defendant's motion to dismiss.[4]

---

4       Defendant also moved to dismiss the complaint on the grounds that the DCHRA does not
require employers to accommodate an employee's family responsibilities.  Def.'s Mem. at 3–5.
Plaintiff did not respond to that argument, *see* Pl.'s Opp., so on that basis alone, the Court could
treat defendant's motion to dismiss as conceded.  *See Hopkins v. Women's Div., Gen. Bd. of
Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd* 2004 WL 11178772 (D.C. Cir.
2004) ("It is well understood in this Circuit that when a plaintiff files an opposition to a
dispositive motion and addresses only certain arguments raised by the defendant, a court may
treat those arguments that the plaintiff failed to address as conceded."); *see also Lewis v. District
of Columbia*, No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. 2011).

        In any event, it appears that plaintiff is alleging that defendant terminated her
employment because she left a shift three hours early to care for her children on one occasion,
and she casts this claim as one of discrimination, and not as a failure to accommodate.  *See*
Compl. ¶¶ 13, 16, 28, 31.  So while defendant may be correct that an employee may not pursue a
claim under the DCHRA for a failure to accommodate family responsibilities, *see Siddique v.
Macy's*, 923 F. Supp. 2d 97, 108 n.11 (D.D.C. 2013), quoting *Wallace v. Skadden, Arps, Slate,
Meagher & Flom,* 799 A.2d 381, 386 (D.C. 2002) ("[T]he DCHRA 'contains no explicit
requirement that an employer accommodate an employee's working schedule so that the
employee can discharge his or her family responsibilities.'"), the Court need not resolve that
issue given the allegations set forth in this complaint.

**CONCLUSION**

For the reasons stated above, the Court finds that plaintiff has failed to state a plausible claim that defendant terminated her employment due to her family responsibilities in violation of the DCHRA. The Court will therefore grant defendant's motion to dismiss.[5] A separate order will issue.

_Amy B Jackson_

AMY BERMAN JACKSON
United States District Judge

DATE: November 4, 2014

---

5    Defendant has requested that plaintiff be denied leave to amend her complaint on the grounds that "[p]laintiff could have amended her Complaint to address [the] problems upon receiving Defendant's Motion to Dismiss, but declined to do so," and that she therefore "should not be entitled to another bite at the apple." Def.'s Reply in Supp. of Mot. to Dismiss [Dkt. # 7] at 2–3. There is no motion for leave to amend pending before the Court, but since this was plaintiff's first attempt at a complaint in this case, the Court finds no grounds to dismiss this action with prejudice.